**Robert KIRK, Sr., et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

Civ. A. No. 88–0490.

United States District Court, District of Columbia.

Jan. 17, 1989.

Peter J. Jacobsen, Washington, D.C., for plaintiffs.

Richard N. Reback, Asst. U.S. Atty., Washington, D.C., for defendant.

## ORDER

REVERCOMB, District Judge.

Plaintiffs in this case seek to compel information and the award of attorney's fees from defendant through the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982 & Supp. IV 1986). Defendant has

moved for summary judgment, which plaintiffs have opposed. Oral argument was heard on November 18, 1988. The Court grants defendant's motion for summary judgment with regard to the request for information, but denies the motion with regard to plaintiffs' request for attorney's fees.

## I. Factual Background

Plaintiffs Robert Kirk, Donald Shannon, and Rose Shannon were investigated by the Federal Bureau of Investigation (FBI) starting in 1980 with regard to their businesses in Newark, Ohio; the investigation led to a criminal misdemeanor information being filed by the United States. Plaintiffs' Opposition at 2. All charges were dismissed in 1984. *Id.* Later that year, plaintiffs Donald and Rose Shannon brought a civil action in federal court in Ohio against FBI agents, federal prosecutors, and private persons. *Id.* at 3. In aid of discovery in that case, plaintiffs in 1985 requested documents held by the FBI concerning the investigation. Defendant's Statement of Facts ¶ 1. The FBI provided plaintiffs with certain documents on the investigation but withheld others, claiming FOIA exemptions. *Id.* ¶ 7.

After losing an appeal of the partial denial, plaintiffs filed the instant case on February 25, 1988, to compel the information that was withheld. *Id.* ¶ 8–10. Reviewing its files once again, the FBI discovered that certain documents that previously had been mistakenly withheld were releasable and gave them to plaintiffs. *Id.* ¶ 10–12.

Plaintiffs and defendant, of which the FBI is part, still dispute the withholding of certain information, primarily the identities of persons whose names were excised from released documents. Defendant contends the disclosure of the identities are covered by FOIA exemptions, and has submitted a declaration from Angus B. Llewellyn, a special agent of the FBI assigned to FOIA matters. In the declaration, Mr. Llewellyn states the reasons why the FBI is withholding the information sought by plaintiffs.

In considering defendant's motion, the Court concludes that there is no genuine issue as to any material fact, *see Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and that defendants are entitled to summary judgment on the issue of disclosure of the information that has been withheld.

## II. FOIA Exemption (7)

The right of persons to gain access to government information under FOIA is limited by exemption (7), 5 U.S.C. § 552(b)(7), which exempts certain "records or information compiled for law enforcement purposes" to the extent that production of the information would, or could be reasonably be expected to, result in any of the harms listed in subsections (A)–(F), 5 U.S.C. § 552(b)(7)(A)–(F). Exemption (7)(C) protects from disclosure information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption (7)(D) protects that information that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). Plaintiffs do not dispute that the information sought was "compiled for law enforcement purposes." Rather, plaintiffs dispute whether disclosure of the information "could reasonably be expected to" implicate the harms noted in exemptions (7)(C) and (7)(D).[1]

## III. Evaluating the Claimed Exemptions

A. Exemption (7)(C)

■ Defendant has invoked the (7)(C) exemption to protect the identities and personal privacy of persons—both FBI officials and private individuals—mentioned in its investigatory records. In considering an exemption for "personal privacy," a court must balance the privacy interest at stake against the public interest in disclosure. *Department of the Air Force v. Rose*, 425 U.S. 352, 370–73, 96 S.Ct. 1592, 1603–04, 48 L.Ed.2d 11 (1976); *Keys v.*

---

1. Plaintiffs no longer pursue the information withheld by defendant under exemptions (b)(5) or (b)(2), 5 U.S.C. § 552(b)(2), (5). Plaintiffs' Opposition at 13.

*United States Department of Justice*, 830 F.2d 337, 346 (D.C.Cir.1987). The defendant need only demonstrate a "reasonable expectation" of an unwarranted invasion of privacy. *Keys*, 830 F.2d at 346. In the instant case, defendant contends that disclosure of the names "could reasonably be expected to constitute an unwarranted invasion of the privacy of the individuals by subjecting them to harassment, unofficial questioning or unwanted public attention." Defendant's Motion at 7; Llewellyn Declaration at 12.

▮ In weighing the privacy rights, the Court first notes that FBI agents in their official capacities may not have as great a claim to privacy as do private citizens, although they do not forgo altogether their right of privacy by virtue of their official status. *Lesar v. United States Department of Justice*, 636 F.2d 472, 487–88 (D.C.Cir.1980). Specifically, when there is evidence of inconsistencies in the statements of FBI personnel or when the reliability of their statements is otherwise in doubt, the balancing scales may tip in favor of disclosure. *See Baez v. United States Department of Justice*, 647 F.2d 1328, 1339, 1341 (D.C.Cir.1980); *Castaneda v. United States*, 757 F.2d 1010, 1012 (9th Cir.1985).

▮ On the other side of the scale, the Court notes that the purpose of aiding private litigation—and plaintiffs have stated that such a purpose is the reason for the instant lawsuit—does not necessarily amount to serving to the "public interest." *See Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981) (public, not private interest must be the balancing factor). Simply because the information is sought for the purpose of a private suit does not mean that a public interest may not be served by disclosure; however, the public interest must consist of *more* than simply the private interest of the party seeking the information in aid of its other suit. *See id.*

▮ Indeed, when plaintiffs seek information that they could at least attempt to get through traditional discovery means, the court hearing the FOIA action should be wary of using FOIA to circumvent reasonable restrictions on discovery, absent a strong public interest. *See id.* (FOIA is not intended to be an administrative discovery statute for the benefit of private parties). The reason for this caution is sound: the court handling the litigation in discovery is better able to evaluate fully the needs and potential inconveniences of all persons involved, unless the FOIA court finds that there is a strong public interest *outside* of the private suit in releasing the information. In this case the parties have not represented whether the matter has been decided by the federal court in Ohio.

Plaintiffs fail to state any "public interest" that would be served by disclosure of the names other than the fact that plaintiffs dispute some of the statements made by and documents released by FBI personnel. Opposition at 4–5. Although plaintiffs call these disputes "inconsistencies," it appears to the Court that the only inconsistency is that plaintiffs gainsay some of the statements and records of the FBI. This case is not like the situation in the *Castaneda* case, in which disclosure of an agent's name was ordered because his statements were found to be internally inconsistent, thus raising doubts about their reliability. 757 F.2d at 1012. *See also Johnson v. United States Department of Justice*, 739 F.2d 1514, 1519 (10th Cir.1984) (identities protectible absent record of improprieties); *Stern v. FBI*, 737 F.2d 84, 93–94 (D.C.Cir.1984) (identities protectible unless evidence of bad faith).

In sum, the Court finds that plaintiffs have not established a significant "public interest" in the disclosure of the identities of the FBI agents. Moreover, the Court finds that release of the identities could reasonably be expected to constitute an unwarranted invasion of the privacy of the agents. Because they have not shown any "inconsistency" or "bad faith" on behalf of the FBI agents, plaintiffs have not shown that they are allowed to take advantage of the exception carved out by the *Baez* and *Castaneda* opinions to the general rule favoring protection of privacy for FBI agents.

Likewise, the Court concludes that plaintiffs are not entitled to the identities of administrative and clerical personnel of the FBI. Plaintiffs allege that the Llewellyn Declaration is insufficient in that it does not "describe in any useful manner how the exemption applies to the information or identities that have been excised." Opposition at 6. The Court finds, however, that the Declaration is sufficiently clear in stating that disclosure of identities is opposed for all FBI personnel because disclosure could reasonably be expected to lead to harassment, unofficial questioning, or unwanted public attention. Declaration at 12–13; Defendant's Motion at 7. Just like FBI agents, administrative and clerical personnel could be subject to harassment, questioning, and publicity, and the Court concludes that the FBI did not need to separate the groups of employees for purposes of explaining why disclosure of their identities was opposed.

■ With regard to the claimed exemptions for persons outside of the FBI, plaintiffs allege that the Llewellyn Declaration is insufficient in that, among other things, it does not specify which deletions of identities correspond to which category of persons—including persons investigated by the FBI, persons merely mentioned in documents, cooperating industry personnel, and persons interviewed for the investigation. For these third parties, plaintiffs argue, "there is no uniform privacy interest, but rather several interests, some greater, some lesser, which may or may not be overcome by Plaintiffs' needs in connection with civil discovery." Opposition at 7.

The Court concludes, however, that the Llewellyn Declaration both adequately sets forth the reasons for the withholding the information for each category and did not need to identify which deletion corresponded with which category.

The Llewellyn Declaration satisfactorily listed the FBI's reasons for not disclosing the names of these third parties. First, with regard to third parties who were the subject of investigation by the FBI, the declaration states correctly that disclosure would constitute an unwarranted invasion of privacy because mention in FBI documents with regard to criminal investigation often "carries with it connotations which tend to draw negative reactions from the general public." Llewellyn Declaration at 13–14; *see Senate of the Commonwealth of Puerto Rico v. United States Department of Justice,* 823 F.2d 574, 588 (D.C.Cir.1987) (upholding nondisclosure on this ground).

The declaration also states that disclosure of the identities of third parties who are mentioned in FBI documents could cause "unsolicited and unnecessary attention to be focused upon the individuals whose names were mentioned and an unearned stigma to be attached to those individuals." Llewellyn Declaration at 14–15. Finally, with regard to the identities of cooperating private industry personnel and other persons interviewed by the FBI, disclosure could lead to unwanted questioning or harassment. *Id.* at 15–17. Moreover, disclosure of the identities of these third parties could cause persons contacted during investigations in the future to be reluctant about cooperating with the FBI. *Id.* at 16.

The Court also agrees that requiring the FBI to match the category of person with the deletion in the records would serve little purpose other than to help significantly in identifying the persons—the exact reason for withholding the information.

■ Plaintiffs contend further that defendant's arguments with regard to invasion of privacy are undermined by the fact that a number of names have already been revealed or would have been revealed had the investigation resulted in a trial. Opposition at 8–9. Plaintiffs note that an affidavit by an FBI agent discloses the identities of several private participants in the investigation. The fact that one document does disclose some names, however, does not mean that the privacy rights of these or others are waived; plaintiffs do not have the right to learn more about the activities and statements of persons merely because they are mentioned once in a public document about the investigation.

Plaintiffs also request the identities of those mentioned in documents who were expected to testify at the criminal trial, had it occurred. Withholding their names is acceptable, the Court believes, because a witness should not lose his right to privacy the moment he agrees to testify at a criminal trial that may never even take place— as happened in the investigation at issue here.

In sum, the Court finds that defendant has shown the existence of substantial privacy interests in withholding the identities sought by plaintiffs. On the other hand, plaintiffs have not shown a significantly counterbalancing public interest in disclosure, other than their interest in aiding their private litigation. Accordingly, the Court concludes that defendant's withholding of identities under exemption (7)(C) was justified.

### B. Exemption (7)(D)

█ Exemption (7)(D), which protects the assurances of confidentiality given to sources, was also invoked by the FBI. Llewellyn Declaration at 17–20. Because confidentiality is routinely assured to sources by the FBI, a reviewing court should presume confidentiality and not order the disclosure of identities unless there are factors in the record to indicate that confidentiality was not expected by the sources in the particular case. *See Miller v. Bell,* 661 F.2d 623, 627 (7th Cir.1981).

█ Plaintiffs argue that information in the record of the instant case shows that confidentiality was not expected by at least some sources in this matter. They note that an affidavit by an FBI agent identified by name several employees of the Recording Industry Association of America, as well as the organization itself, as sources for the investigation against plaintiffs. Opposition at 11. In addition, they point out that the criminal information filed against plaintiffs listed "numerous copyright owners" who may have supplied information to investigators. Again, plaintiffs also argue that persons who were

expected to testify at trial could not have expected that their identities remain confidential. Opposition at 12.

The Court, however, agrees with defendant that the limited mention of sources in documentation and the fact that certain sources may have testified at trial does not destroy these or other persons' rights of confidentiality. *See Miller,* 661 F.2d at 627–28. Plaintiff argues presusively that "if the information plaintiffs seek already were public, it would not be seeking the same information in this FOIA lawsuit." Reply at 6. The fact that certain names are mentioned does not destroy confidentiality; plaintiffs do not know who said what to the investigators. Indeed, it seems likely that plaintiffs seek to try to "match" names with statements, thus destroying the confidentiality protected by exemption (7)(D). Wisely, a number of courts have held that disclosure of identity, by whatever means, does not automatically obliterate the remaining protection against confidentiality. *See, e.g., Irons v. FBI,* 811 F.2d 681, 685–87 (1st Cir.1987) (an initial willingness to testify does not waive the right to privacy); *Weisberg v. United States Department of Justice,* 745 F.2d 1476, 1491 (D.C.Cir.1984) (publicity does not destroy confidentiality).

In sum, the Court finds that the limited disclosure of names noted by plaintiffs does not overcome the strong presumption under exemption (7)(D) in favor of withholding further information to preserve the confidentiality of sources. Accordingly, the Court concludes that the FBI properly raised exemption (7)(D) for the withheld information.

### IV. Attorney's Fees

Plaintiffs also seek attorney's fees. Under a provision of FOIA, plaintiffs can recover attorney's fees if they have "substantially prevailed" in getting the materials requested in the FOIA suit. 5 U.S.C. § 552(a)(4)(E). In the instant case, defendant admits that a because of a clerical error,[2] the FBI did not release the bulk of

---

**2.** Defendant states that the case analyst who

handled plaintiff's request during the adminis-

the documents requested until after plaintiffs filed this suit. After the suit was filed, defendant voluntarily conducted a new search, which revealed that most of the documents had been mistakenly withheld. Defendant's Supplement to Reply at 1–2.

■ Although a plaintiff must "substantially prevail" to recover attorney's fees, a court order compelling disclosure is *not* a prerequisite to a court's award of attorney's fees. *Pyramid Lake Paiute Tribe v. United States Department of Justice*, 750 F.2d 117, 119 (D.C.Cir.1984); *Foster v. Boorstin*, 561 F.2d 340, 342 (D.C.Cir. 1977). Absent a court order, the plaintiff must show that prosecution of the action "could reasonably be regarded as necessary to obtain the information . . . and that a causal nexus exists between that action and the agency's surrender of the information." *Pyramid Lake Paiute Tribe*, 750 F.2d at 118–19 (*citing Cox v. United States Department of Justice*, 601 F.2d 1, 6 (D.C. Cir.1979)).

■ In the instant case, the facts presented to the Court lead it to believe that it was the filing of this suit which caused the FBI to recognize its mistake, and it appears that such a suit was perhaps the only reasonable way that plaintiffs could have made the FBI recognize its mistake. True, this is not the prototypical FOIA case in which a winning plaintiff seeks attorney's fees. However, the Court believes that agency negligence in failing to release documents that are clearly releasable may be *more* deserving of the assessment of attorney's fees than agency failure to release documents because of a incorrect legal impression that they were legally protected from release. Therefore, the Court cannot at this time grant summary judgment in favor of defendant on this issue.

## V. Orders

Accordingly, this 17 day of January, 1989, it is

trative appeal erroneously believed that the criminal investigation was still active, thus rais-

ORDERED that defendant's motion for summary judgment with regard to defendant's request for information is GRANTED; it is further

ORDERED that defendant's motion for summary judgment with regard to the issue of attorney's fees under FOIA is DENIED.

ing the broad FOIA exemption (b)(7)(A), 5 U.S.C. § 552 § (b)(7)(A).